USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/18/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYLVIA WRIGHT,

                    Plaintiff,

             v.

NEW YORK TRANSIT AUTHORITY and JOHN FOLK,

                    Defendants.

No. 18-cv-1968 (RA)

MEMORANDUM OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Sylvia Wright brought this employment discrimination and retaliation action against her employer, the New York City Transit Authority ("NYCTA"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*, and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq*. Now before the Court is her former attorney, Michael Diederich, Jr.'s, motion for authorization of payment of a $30,000 charging lien pursuant to New York Judiciary Law § 475. For the reasons that follow, Diederich's motion is granted.

## BACKGROUND

Wright initiated this action, *pro se*, against NYCTA on March 5, 2018, alleging that she was unlawfully groped by a male coworker. See Dkt. 2 ("Compl.") at 5. In April 2018, NYCTA charged Wright with disciplinary infractions in connection with a purported threat she subsequently made to that coworker. See Dkt. 49 ("Wright Decl.") ¶ 6. In April or May 2018, NYCTA terminated her employment. See *id*. ¶¶ 2, 6; Dkt. 48 ("Wright Opp.") at 2. Shortly thereafter, she and Diederich entered into a retainer agreement for representation in this action, as

well as in an arbitration challenging NYCTA's disciplinary charges. *See* Wright Decl. ¶¶ 7, 10; Wright Opp. at 2-3; Dkt. 43-1 ("Diederich Decl.") ¶¶ D-G. After an arbitrator ruled against Wright in relation to her challenge to the disciplinary charges in May 2018, Diederich filed a state court action on Wright's behalf, claiming that the arbitrator's disciplinary decision was arbitrary. *See* Wright Decl. ¶¶ 11-12. Following a state court ruling in Wright's favor, Diederich sought a preliminary injunction in this Court to reinstate Wright's employment with NYCTA. *See* Diederich Decl. ¶ J; Dkt. 23.

Throughout these actions, Diederich and Wright negotiated various agreements regarding payment of Diederich's legal fees, which at times were billed between $200 and $400, and/or at a percentage of Wright's prospective recovery. *See* Dkt. 43-2 ("Retainers"); Dkt. 43-3 ("Email Correspondence"); Wright Decl. ¶¶ 8, 10, 12, 16; Diederich Decl. ¶¶ A, E-G, M. Because Wright allegedly owed Diederich nearly $18,000 in outstanding legal fees as of December 12, 2018, *see* Email Correspondence at 10, they agreed to a modified retainer agreement in which Diederich would receive (1) "the greater of one-third of the recovery or [his hours] expended to date in [Wright's] case at [the] ordinary hourly rate ($400)" and (2) contingent upon reinstatement of Wright's employment, 5 percent of her gross NYCTA earnings for a period of four years, *id.* at 10-11.

In December 2018, the Court referred Wright and NYCTA to the Southern District of New York's Alternative Dispute Resolution Program. Dkt. 17. Following mediation and a conference with the Court in January 2019, NYCTA agreed to (1) reinstate Wright and pay her at her former salary of $80,000 annually, (2) pay her $7,000 in accrued vacation pay, and (3) pay her $30,000 in additional damages. *See* Wright Decl. ¶ 30. Over the subsequent two months, Wright and Diederich continued to negotiate attorney's fees. *See* Wright Opp. at 5; Diederich Decl. ¶¶ R-T.

Diederich contends that he and Wright orally agreed that the $30,000 NYCTA payment "would be paid directly" to Diederich but that he would not receive 5% of Wright's future earnings. *See* Diederich Decl. ¶ T. Wright, by contrast, contends that she was "unwilling to agree" to Diederich's proposal that the $30,000 NYCTA payment would go directly to him. Wright Decl. ¶ 27. In any event, the alleged oral agreement did not settle the dispute. On March 26, 2019, Diederich moved to reopen this case, requested a conference to discuss the ongoing fee dispute, and sought the Court's permission to withdraw as counsel in the event that Wright failed to cooperate with the payment of fees. *See* Dkt. 39.

The Court held a conference on April 12, 2019, during which Wright discharged Diederich as her attorney, entered into the settlement with NYCTA *pro se*, and agreed to the previously agreed upon settlement terms of reinstatement and a collective $37,000 in damages, including $7,000 in accrued vacation pay and $30,000 in other damages. *See* Wright Opp. at 6.

On April 17, 2019, Diederich filed a motion pursuant to N.Y. Jud. Law § 475 seeking enforcement of a charging lien in the sum of $30,000 and an order directing NYCTA to pay "any proceeds otherwise due" to Wright directly to Diederich. *See* Dkt. 43. In a declaration filed in support of his motion, Diederich asserts that the value of his professional time devoted to Wright's case was over $40,000 and "thus significantly exceeds the settlement payout ($30,000) created as a result of [his] professional efforts." Diederich Decl. ¶ B; *see also* Dkt. 43-4 ("Time and Expense Itemization") (providing that Wright owed Diederich $43,152). On May 22, 2019, Wright filed an opposition to Diederich's motion with the assistance of the New York Legal Assistance Group Legal Clinic for Pro Se Litigants in the SDNY, *see* Dkts. 48-49, and one week later Diederich filed his reply, *see* Dkts. 50-51.

On July 10, 2019, NYCTA, Wright, and Diederich agreed to a stipulation that was signed and ordered by the Court. *See* Dkt. 57. The stipulation provided that Diederich would waive his pending charging lien with respect to the $7,000 cash value of Wright's accrued vacation time, thus authorizing NYCTA to pay it directly to Wright. *See id*. Yet the matter of Diederich's attorney's fees remained unsettled.

On October 18, 2019, Diederich filed a letter informing the Court that on the previous day, he and Wright took part in an arbitration regarding their fee dispute at the Rockland County Bar Association under state court supervision. *See* Dkt. 58. The three-arbitrator panel concluded on October 24, 2019 that Diederich was entitled to a $54,552 award for his services. *See* Dkt. 59 at 3. Thereafter, Wright moved to set aside the arbitration award in state court. *See* Dkt. 60, Ex. 2 (*Wright v. Diederich*, No. 8871/19, (N.Y. Sup. Ct. Orange Cty. Feb. 5, 2020)). On February 5, 2020, the New York State Supreme Court in Orange County declined to set aside the award, holding that Wright did not meet the "'heavy burden' of proving by 'clear and convincing evidence' that impropriety by the arbitrator prejudiced [her] rights or impaired the integrity of the arbitration process . . . [in fact, she] did not present, or even describe, the written evidence she claim[ed] was not considered by the arbitration panel." *Id.* at 4 (quoting *Verille v. Jeanette*, 163 A.D.3d 830 (2nd Dept. 2018).

On May 8, 2020, Diederich notified the Court that Wright had filed for Chapter 7 personal bankruptcy. *See* Dkt. 61. After the bankruptcy trustee conducted a meeting of creditors, he emailed Wright that he would be not be pursuing or deeming the $30,000 settlement as an asset of Wright's bankruptcy estate, meaning that it would not be used as proceeds for creditors to claim. *Id.* No other person or entity has since pursued the $30,000 settlement. *See id.* at 1-2. On June 1, 2020, Diederich notified the Court that Wright had been discharged in bankruptcy with the $30,000

settlement unclaimed. *See* Dkt. 62. Accordingly, there has been no claim to the settlement funds other than Diederich's charging lien. One month later, Diederich filed an additional letter reiterating that this Court is within its power to authorize payment of the charging lien and that no one other than him is claiming the $30,000 settlement funds. *See* Dkt. 63.

Diederich filed certificates of service attesting to service on Wright of each of his letters to the Court regarding the fee arbitration and the bankruptcy petition. *See* Dkts. 58-63. Wright has not filed responses to any of Diederich's letters.

## DISCUSSION

"[I]t is well established that a court 'may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys.'" *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09 Civ. 9687 (JMF), 2014 WL 462823, at *1 (S.D.N.Y. Feb. 5, 2014) (quoting *Marrero v. Christiano*, 575 F. Supp. 837, 839 (S.D.N.Y. 1983)). Money charged for work performed outside of a federal case may be incorporated into a charging lien as an exercise of the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). *See Sellick v. Consol. Edison Co. of N.Y., Inc.*, No. 15-cv-9082 (RJS), 2017 WL 1133443, at *2 n.2 (S.D.N.Y. Mar. 23, 2017). "[T]he lien created by [N.Y. Jud. Law §] 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts," *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 67 (2d Cir. 1991) (internal citations omitted), and federal courts should only decline supplemental jurisdiction in exceptional circumstances, such as those enumerated in 28 U.S.C. § 1367(c).[1] *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,

---

[1] "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if—(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

5

140 F.3d 442, 448 (2d Cir. 1998). None of the circumstances enumerated in 28 U.S.C. § 1367(c) apply in the instant case. Moreover, Wright does "not dispute that this court has the authority to fix and enforce a charging lien." Wright Opp. at 6. The Court will thus exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to determine whether to authorize payment of the charging lien.

## I.  Entitlement to a Charging Lien

N.Y. Jud. Law § 475 provides, in pertinent part:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department . . . the attorney who appears for a party has a lien upon his or her client's cause of action . . . which attaches to a . . . settlement [] in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475; *see also Fontana v. Republic of Arg.*, 962 F.3d 667, 673-74 (2d Cir. 2020).

A charging lien "does not merely give an attorney an enforceable right against the property of another, it gives the attorney an equitable ownership interest in the client's cause of action" and gives the attorney "a vested property right created by law." *LMWT Realty Corp. v. Davis Agency*, 649 N.E.2d 1183, 1186 (N.Y. 1995) (internal citation omitted). The Second Circuit explained the rationale behind charging liens as follows:

> New York's statutory charging lien, *see* N.Y. Judiciary Law § 475 (McKinney 1983), is a device to protect counsel against "the knavery of his client," whereby through his effort, the attorney acquires an interest in the client's cause of action. *In re City of New York,* 157 N.E.2d 587, 590 (N.Y. 1959) (internal citations omitted). The lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence "should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures. *Williams v. Ingersoll,* 89 N.Y. 508, 517 (1882).

*Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 177 (2d Cir. 2001).

The threshold question for determining entitlement to a charging lien is whether the discharge of an attorney invalidates the attorney's right to funds.  "Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services." *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *2 (E.D.N.Y. Aug. 28, 2009) (citing N.Y. Jud. Law § 475).  The charging lien is enforceable "as long as the attorney . . . is not discharged for 'good cause.'" *Pettiford v. City of Yonkers*, 14 Civ. 6271 (JCM), 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010)).  "'Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty.'" *Antonmarchi v. Consol. Edison Co. of New York*, 678 F. Supp. 2d. 235, 241 (S.D.N.Y. 2010) (internal citations omitted).  A discharge due to a fee dispute does not constitute a discharge for cause or a significant breach of legal duty that would invalidate a charging lien. *See Pettiford*, 2020 WL 1331918, at *1, *3 (authorizing a charging lien after the plaintiff "failed to make payments under the Retainer Agreement" and holding that the attorney "was not discharged for cause"); *see also Stair*, 722 F. Supp. 2d at 268 ("[N]on-payment of legal fees is a valid basis for granting a motion to withdraw . . . [especially when the plaintiff] has deliberately disregarded his financial obligations to [his attorney]"); *McDermott v. Great Am. All. Ins. Co.*, No. 5:02-CV-0607 (NAM/DEP), 2006 WL 2038452, at *3 (N.D.N.Y. Jul. 18, 2006) ("[T]he termination of the relationship between the plaintiff and his counsel appears to stem from irreconcilable differences relating to the fee dispute, rather than anything that would rise to a level sufficient to sustain a finding of legal cause for termination.").

Here, Wright discharged Diederich as counsel following their protracted disagreement over attorney's fees. *See* Dkt. 39; Wright Decl. ¶¶ 29-30.  She has never alleged that he breached a

7

legal duty. Accordingly, Wright did not discharge Diederich "for cause," and the discharge does not invalidate Diederich's charging lien. *See Antonmarchi*, 678 F. Supp. 2d. at 241.

Further, Wright's bankruptcy does not preclude Diederich from asserting his charging lien. "The fact that bankruptcy may have intervened between the time when the attorney commenced the action and when the assets were received in satisfaction of the cause of action is not significant because the charging lien relates back to the initiation of the action[]." *In re Stylianou*, No. 01-16121 (AJG), 2009 WL 2930143, at *103 (Bankr. S.D.N.Y. Aug. 21, 2009) (quoting *In re A. Tarricone, Inc.*, 76 B.R. 53, 56 (Bankr. S.D.N.Y. 1987)); *see also In re 9 Stevens Cafe*, 161 B.R. 96, 97-98 (Bankr. S.D.N.Y. 1993). In fact, a charging lien "takes effect from the time the services were commenced, and a trustee in a subsequent bankruptcy case involving the client takes the property or fund for the estate subject to such lien." *In re 9 Stevens Cafe*, 161 B.R. at 98 (holding that because the attorney provided representation in state court litigation that rendered a $45,000.00 settlement, "the legal services which [he] performed entitle him to claim a charging lien against the estate to the extent of the settlement fund which he produced"). Wright's Chapter 7 bankruptcy proceeding thus does not extinguish Diederich's lien "because the charging lien relates back to the initiation of the action[],"—here, Diederich's initial representation of Wright in the disciplinary proceeding beginning in April of 2018. *In re Stylianou*, 2009 WL 2930143, at *103; *see also* Dkt. 44 at 4. Moreover, no other creditors have claimed the settlement funds and the trustee did not proceed as if the funds were an asset of the bankruptcy estate. *See* Dkts. 61-63.

In sum, authorizing Diederich's charging lien is within this court's jurisdiction, comports with the settlement agreement between the parties, and is unimpeded by the bankruptcy proceeding or any competing creditor claims.

## II. Charging Lien Amount

The Second Circuit has instructed that "[a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted). "If the amount of the charging lien has been fixed by agreement, as here, execution is appropriate on the judgment for the amount agreed to by the parties." *Itar–Tass Russian News Agency,* 140 F.3d at 453 (internal citation omitted).

Because Diederich and Wright purportedly agreed orally to a $30,000 settlement, *see* Diederich Decl. ¶ T, Diederich contends that the value of his time spent litigating on Wright's behalf is greater than $40,000, Diederich Decl. ¶ B; Dkt. 43-4, and the arbitration panel affirmed Diederich's award of $54,552.00, *see* Dkt. 59 at 3—a significantly higher sum than what Diederich seeks here—the Court holds that Diederich's charging lien amount is fair and "equitable in nature," *Sutton*, 462 F.3d at 161.[2] Accordingly, the Court authorizes NYCTA to pay Diederich $30,000.

---

[2] Even if, as Wright contends, she was "unwilling to agree" to Diederich's proposal that the $30,000 NYCTA payment would go directly to him, Wright Decl. ¶ 27, the Court nonetheless finds a $30,000 lien fair and equitable. As described above, under Diederich and Wright's written modified retainer agreement dated December 12, 2018, Diederich would receive (1) "the greater of one-third of the recovery or [his hours] expended to date in [Wright's] case at [the] ordinary hourly rate ($400)" and (2) contingent upon reinstatement of Wright's employment, 5 percent of her gross NYCTA earnings for a period of four years. Email Correspondence at 10-11. As Wright was reinstated at her prior annual salary of $80,000 pursuant to the terms of her settlement agreement with NYCTA, *see* Wright Opp. at 6, 5 percent of her gross NYCTA earnings for a period of four years is $16,000. The December 12, 2018 agreement states that "[t]he value of [Diederich's] time spent to date is almost $20,000, plus expenses," of which Wright had paid $2,060. Accordingly, under the terms of the December 12, 2018 written agreement, Diederich would receive approximately $33,940: the sum of the roughly $20,000 value of Diederich's time to date and the $16,000 to account for 5 percent of Wright's gross earnings for four years, less the $2,060 Wright had already paid. A $30,000 lien is thus less than the sum that Diederich would have been owed under his and Wright's prior written agreement.

## CONCLUSION

For the reasons stated above, Diederich's request for authorization of the $30,000 payment of his charging lien, pursuant to N.Y. Jud. Law § 475, is granted.

SO ORDERED.

Dated:   August 18, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge